IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOSHUA S. FERGUSON                                              PLAINTIFF

        v.                         Civil No.  16-5168

DEPUTY FIRST CLASS COBB                                         DEFENDANT


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Ouachita River Unit of the Arkansas Department of Correction (ADC).  The claim at issue in this case arose while Plaintiff was incarcerated at the Washington County Detention Center (WCDC).  Plaintiff contends he was sexually assaulted by the Defendant on June 15, 2016, during a pat down search.

Defendant has filed a motion for summary judgment (Doc. 22).  A hearing on the motion was held on January 26, 2017.  Plaintiff appeared by video.  Plaintiff testified in response to the summary judgment motion and a video of the incident was viewed.

### 1.  Background

Plaintiff was incarcerated at the WCDC from March 20, 2016, until his transfer to the ADC on August 16, 2016.  *Defendant's Exhibit* (hereinafter *Deft's Ex.*) A-1 at 1.  He was charged with failure to register as a sex offender and a charge of violation of his probation was added at a later point.  *Deft's Ex.* A-1 at 3, 10-11.

-1-

On June 15, 2016, Plaintiff was in convicted status. *Deft's Ex.* A-1 at 22.  The inmates were taken to the hallway during a shake down of the pod.  Pat down searches were conducted of the inmates.  Plaintiff testified that during the pat down, Defendant grabbed his genitals in a very rough manner, "long enough to know what he was doing."  Plaintiff testified Defendant inflicted just enough pain to send a message.  Plaintiff testified that Defendant was calling him a child molester.  In Plaintiff's opinion, Defendant had an "attitude against sex offenders."

In his deposition, Plaintiff described the incident as follows: "He went up my right leg, and, when he come up my left leg, he had me by my balls.  And he said, 'What I'm looking for is evidently not there,' and he let go.  He pushed me up against the wall and said, 'Next child molester in line, please.'" *Deft's Ex.* B at 13.

Plaintiff testified he had been in and out of jail and shook down all his life but had never been "touched the way [Defendant] touched me." *Deft's Ex.* B at 13.  Plaintiff testified he suffered no physical injury and sought no medical treatment for injuries associated with the incident. *See Deft's Ex.* A-2; *Deft's Ex.* B at 38 ("No, I wasn't in pain").

Plaintiff testified he did talk to the mental health nurse twice about it. *Deft's Ex.* B at 26-33.  The first visit he believed occurred a few days to a week after the incident. *Id.* at 32-33.  There is nothing in the summary judgment record indicating these visits took place.

Plaintiff called the Rape Crisis Center to report this incident pursuant to the Prison Rape Elimination Act (PREA).  He testified he was told the matter would be investigated and that he need take no further action.

Plaintiff testified that at some point between June 15, 2016, and June 17, 2016, Sergeant Arnold spoke to him and prepared an incident report.  Plaintiff testified that, an hour later, Corporal Mulvaney came to talk to him.  According to Plaintiff, Corporal Mulvaney said he had

reviewed the video and nothing happened.  He instructed Plaintiff to stop calling PREA.

Plaintiff testified that Corporal Mulvaney stated that if Plaintiff did not stop calling PREA, he

would wind up somewhere he did not want to be.  Plaintiff filed this § 1983 case  while he was

still at the WCDC.  *Deft's Ex.* B at 39.

On June 17, 2016, Sergeant Arnold entered the following incident report:

On 6/15/16 I received a call from Chelsea at the Rape Crisis Center.  She received a call from Detainees Damian Mason, Jackie Turner, and Joshua Ferguson.  She advised they all advised her that they had been "violated" and "went too far" by deputies during their pat downs.  Chelsea advised Cpl. Cobb was named as one of the deputies.  I advised Chelsea I would look into the situation I watched video in W Block during the times in questions.  At approx. 14:05 hours, the footage showed deputies going into W block to perform a "shake down" searching for contraband.  Before the shakedown, all detainees were placed out in the hallway to be searched before being placed on the yard so the deputies could perform the shake down.  I observed nothing unusual or out of the norm on the performance of the pat downs completed by the deputies during this time.

Spoke to Detainees Ferguson, Turner, and Mason, I advised them I had reviewed film and found the incident unfounded.  I explained to them, I seen nothing out of the ordinary, or extra time being spent on their pat downs.  Detainee Turner asked me if a deputy is allowed to touch that area "and motioned to his genital area" when patting you down.  I explained that a pat down is a search of their person for the purpose of checking the person for contraband.  I explained to them pat downs are to be thorough to ensure the security of the facility.  Mr. Turner became agitated and said "thats fucked up" and no one should touch a person in that area.  I attempted to explain the pat down I reviewed showed to be a routine pat down, that I did not see any lingering in that area.  Mr. Turner and Ferguson advised they wanted to go back to the block and let their attorney's handle it, because it would be "handled," Detainee Mason did not speak during the conversation.

*Deft's Ex.* A-3 at 15.

Plaintiff testified that on June 29, 2016, he asked Corporal Mulvaney to save the video

footage and provided him with an estimated time.  *See also Deft's Ex.* A-4 at 26.  The following

day, Corporal Mulvaney indicated the video was preserved and asked what Plaintiff's complaint

-3-

was about.  *Id.* at 27.  Plaintiff testified he advised Corporal Mulvaney that the incident had been

reported to another office and was being investigated.  *Id.*  Plaintiff testified, further, that

Sergeant Arnold had been notified about the incident and no action was taken.  *Id.*

Plaintiff did not file a grievance about the pat down.  *Deft's Ex.* B at 24.  He testified he

"was scared they'd do something to" him if he filed a grievance.  *Id.*  He had already been told

by Corporal Mulvaney "to leave it alone."  *Id.*

By affidavit, Corporal Mulvaney indicates detainees are subject to clothed pat-down

searches at all times.  *Deft's Ex.* A at ¶ 7; *See also Deft's Ex.* A-6 at 10.  The purpose of the

search is to find contraband.  *Id.*  Corporal Mulvaney describes a pat-down search as follows:

> A pat down search may include officers running their hands (on the outside of
> clothing) all the way up the legs of a detainee, including the area between their
> inner thigh and crotch; running hands up the back, chest, and arms of the detainee
> to check for contraband in those areas; grabbing the waistband of the detainee's
> jail uniform and pulling them away, shaking in a manner intended to dislodge
> anything if contraband is hidden in the pants or undershorts; or having inmates
> remove socks and show the bottom of their feet.  If something abnormal is
> located, the officer may squeeze or manipulate the object to try to identify it.

*Id.*

Defendant has submitted a video of the incident.  *Deft's Ex.* A-5.  In the video, the

inmates come out of a hallway, turn the corner, and begin lining up against the wall.  Plaintiff

is the first inmate to line up against the wall and is at the corner where the two hallways meet.

The inmates stand facing the wall with the arms stretched out and hands against the wall.  Their

legs are slightly spread.  The inmates are initially followed by two officers.  Defendant then

comes around the corner and begins to pat down the Plaintiff.  At 16:55, Defendant uses his leg

to spread Plaintiff's legs a little further apart.  Defendant places his hands at the back of Plaintiff's

-4-

neck and shakes the Plaintiff's shirt. Defendant reaches around the front and shakes Plaintiff's shirt. Defendant then shakes Plaintiff's pants around the waist band. At 17:05, Defendant begins patting down the Plaintiff's back, shoulders and chest. At 17:08, Defendants hand goes down the outside the Plaintiff's right leg. Defendant's left hand appears to be in the Plaintiff's crotch area for one to two seconds. Defendant's hand then goes along the outside of the Plaintiff's left leg. At 17:16, the pat down is over and Plaintiff is directed to the opposite wall. Defendant then moves on to the next inmate and appears to follow the exact same procedure.

At no time does the Plaintiff flinch, or make any other movement suggesting he was uncomfortable or hurt in anyway. He does not turn his head to object or make any other overt movements suggesting he had been sexually assaulted.

### 2.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view all evidence and

-5-

inferences in a light most favorable to the nonmoving party.  See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

**3.  Discussion**

Defendant has moved for summary judgment arguing: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's constitutional rights were not violated; and (3) Defendant is entitled to qualified immunity.

**(A).  Failure to Exhaust**

The Prison Litigation Reform Act (PLRA) in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory.  Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  Id. at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Id.

AO72A
(Rev. 8/82)

"[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction."  Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

It is true that Plaintiff does not contend he submitted a grievance via the electronic kiosk. However, he did file a report with PREA; he was advised by PREA that he need take no further steps; he spoke with Sergeant Arnold regarding the incident; he spoke with Corporal Mulvaney regarding the incident; and he asked for the video of the incident to be preserved.  Clearly, the purpose of the exhaustion requirement has been met.  The WCDC was given the opportunity, prior to Plaintiff filing suit, to investigate and resolve the issues.  No conceivable argument can be made that WCDC officials were unaware of the incident prior to this suit being filed.

### (B).  Constitutional Violation

Plaintiff was in convicted status when the alleged sexual assault occurred.  As seen below, whether viewed as an excessive use of force or a conditions of confinement claim, Plaintiff's claim fails as a matter of law.

The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  "While an Eighth Amendment claimant must allege and prove the unnecessary and wanton infliction of pain, the particular standard to be applied depends upon the kind of conduct of which the claimant complains."  Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998)(citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).

"When excessive force is alleged, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

-7-

AO72A
(Rev. 8/82)

harm.'" Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013)(quoting Hudsonv. McMilliam, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993).

The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986).

In Wilkins v. Gaddy, 590 U.S. 34 (2010), the Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010).

"A pat-down search is by definition of short duration and minimal intrusiveness, even though some incidental touching of anal and genital areas my occur." Tarpley v. Stepps, 2007 WL 844826, *4 (E.D. Mo. March 19, 2007)(citing Timm v. Gunter, 917 F.2d 1093, 1100 (8th Cir. 1990)). In this case, the pat-down search occurred in plain view of other inmates and guards and was done prior to the inmates being allowed out in the yard.

Here, Plaintiff maintains the Defendant roughly groped his genital area for a period of a few seconds during the course of an otherwise routine pat-down search. In view of the video tape, I conclude there are no genuine issues of material fact as to whether Defendant used excessive force against the Plaintiff during the pat down. The pat down search lasted only a few seconds, caused only minor discomfort, and there is no suggestion that the search was conducted in an abusive fashion or with unnecessary force. Plaintiff did not react in anyway to the alleged

-8-

rough sexual groping. This belies the existence of any Eighth Amendment violation. See e.g.,

Berryhill, 137 F.3d at 1075 (no Eighth Amendment violation when Plaintiff suffered nothing

more than a brief unwanted touch on his buttocks); Davis v. Castleberry, 364 F. Supp. 2d 319,

321 (W.D.N.Y. 2005)(no Eighth Amendment claim where the pat down occurred prior to

allowing inmate to enter the exercise area, any manual search requires some amount of

manipulation of the genitals, grabbing and tugging may cause some discomfort, but does not rise

to the level of an unnecessary and wanton infliction of pain so long as it occurs during an

otherwise justified search)(quotation marks and citation omitted); Hill v. Blum, 916 F. Supp.

470, 473 (E.D. Penn. 1996)(no Eighth Amendment claim stated where Plaintiff "concedes the

pat search lasted only two seconds and caused only minor pain, and [Plaintiff] has failed to set

forth facts suggesting that Officer Blum conducted the search in an abusive fashion or with

unnecessary force"); see also Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004)("In the

context of bodily searches performed upon those incarcerated in our prison system, only those

searches that are maliciously motivated, unrelated to institutional security, and hence totally

without penological justification are considered unconstitutional").

     In a conditions of confinement case, the Cruel and Unusual Punishment Clause of the

Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of

pain," or are "grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452

U.S. 337, 347 (1981); see also Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate

indifference standard of the Eighth Amendment applies to all claims that prison officials failed

to provide adequate food, clothing, shelter, etc., whether brought by pretrial detainees or

-9-

convicted inmates).  Prison condition claims include threats to an inmate's health and safety. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." Id. (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." Revels, 382 F.3d at 875.

Here, Plaintiff does not state a cognizable claim that he was subjected to deliberate indifference.  "Plaintiff's allegations do not demonstrate that the alleged sexual assault[][was] objectively, sufficiently serious or repetitive, or that the [Defendant] had a culpable state of mind." Montoya-Hernandez v. Watkins, 2012 WL 204075, *2 (N.D. Tex. 2012).

### (C).  Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendant is entitled to qualified immunity. See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

-10-

**4.  Conclusion**

For the reasons stated, I recommend that Defendant's motion for summary judgment (Doc. 22) be granted and this case **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of July 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

-11-